**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON**

**CIVIL ACTION NO. 05-210-DLB**

**TRI-STATE EQUIPMENT RENTALS, LLC**                                      **PLAINTIFF**

vs.                    <u>**MEMORANDUM OPINION & ORDER**</u>

**MARK A. CHEVALIER,
d/b/a MAC INTERNATIONAL**                                                         **DEFENDANT**

*******************************

## I.   INTRODUCTION

Plaintiff, Tri-State Equipment Rentals, LLC ("Tri-State"), brings this action against Defendant, Mark Chevalier ("Chevalier"), d/b/a MAC International, for breach of contract and fraud surrounding the purchase of haul trucks.  This matter is before the court upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 34) pursuant to FRCP 12(b)(2).  Plaintiff filed a Response to the motion (Doc. # 37), to which Defendant filed a Reply (Doc. # 39).  Therefore, the motion is now ripe for the Court's review.

## II.   FACTUAL BACKGROUND

Tri-State is a company incorporated in Kentucky, with its principal place of business in Verona, Kentucky.  Chevalier is an individual citizen and resident of the State of Wisconsin.  The legal status of MAC International is unclear.

In mid-2005, Rick Newman ("Newman"), President of Plaintiff Tri-State, received an email solicitation from Chevalier regarding the purchase of trucks.  This was one of several

email solicitations Newman allegedly received at his Kentucky office from Chevalier. Responding to Chevalier's solicitation, Tri-State contracted to purchase four Volvo haul trucks from Chevalier. The purchase order is evidenced by four separate "invoices" dated July 11, 2005, which are signed by Chevalier and addressed to Newman. Additionally, there is a single invoice for the purchase of four Volvo haul trucks dated August 16,2005. While this invoice is similarly signed by Chevalier, and addressed to Newman, it names the party "Sold To" as Newman Tractor, Inc., rather than Tri-State. However, Newman Tractor is listed as having the same address as Tri-State.

There are two primary factual disputes germane to the question of personal jurisdiction. First, while Plaintiff views the four initial invoices, those dated July 11, 2005, as four independent transactions and contracts, Defendant maintains that the invoices constituted only one transaction, although memorialized on different invoices. Tri-State referred to its agreement with Chevalier in the Complaint as "a contract," but later characterized it, within its response to Defendant's motion, as "separate transactions." In contrast, Chevalier has characterized the agreement as "a single order on a single day" and points to the fact that the invoices are consecutively numbered.

Second, Defendant questions whether Plaintiff has any claim under the August 16, 2005 invoice because the purchasing party is Newman Tractor, not Tri-State.[1] While Chevalier has raised the argument that the August 16 invoice names Newman Tractor as the purchaser and, therefore, does not implicate Plaintiff, this characterization appears inconsistent with admissions previously made by Chevalier. In his answer, Chevalier

---

[1] Tri-State has not indicated what "Newman Tractor, Inc." is, how it is connected with Tri-State, or why the 8/16/05 invoice names Newman Tractor as the purchaser.

admitted entering into a contract with Tri-State for the purchase of the four trucks on August 16. This admission was reiterated in Chevalier's subsequent admissions in which Chevalier acknowledged entering into "agreements" with Tri-State for the purchase of the four trucks covered by the August 16 invoice. Additionally, it is undisputed that Tri-State paid $258,000 to Chevalier as a 20% deposit on all of the invoices. Based on the deposit amounts indicated on the invoices, the amount paid as a 20% deposit only makes sense if Tri-State paid on all five invoices, which includes the August 16 invoice.

In terms of the extent to which the parties were in business, communications regarding these transactions occurred on several occasions via telephone, facsimile, and electronic mail. Chevalier knowingly communicated with Newman at his Tri-State offices in Kentucky, although there is no evidence that Chevalier has ever been physically in the state of Kentucky relating to the transactions with Tri-State. On July 11, 2005, as a 20% deposit on the purchase price for July 11 invoices, Tri-State wired $180,000 to Chevalier's account from Tri-State's bank located a Burlington, Kentucky. Similarly, as satisfaction for the deposit on the August 16 invoice, Tri-State wired an additional $78,000 to Chevalier on August 18, 2005.

Also on August 18, 2005, Tri-State received a copy of a correspondence indicating that the four trucks covered by the July 11 invoice had been loaded onto a ship and would arrive at port toward the end of September 2005. To date, however, Tri-State alleges that none of the trucks under any of the invoices have been delivered. Additionally, none of the deposit money has been returned by Chevalier to Tri-State. Chevalier claims that the money was paid to an international supplier, Derelex Industries, who was responsible for supplying the trucks and having them shipped.

### III.     ANALYSIS

**A.     Standard of Review**

Two conditions must be met for a federal court to exercise personal jurisdiction over a defendant: (1) the defendant must fall within the long-arm statute of the state in which the federal court sits and (2) the Due Process Clause of the U.S. Constitution must permit the exercise of such jurisdiction.  *Aristech Chemical Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).  In Kentucky, the first part of this analysis is easily dismissed, as the Kentucky Supreme Court has interpreted the long-arm statute, K.R.S. § 454.210(2)(a), to extend to the limits of the Due Process Clause.  Accordingly, a federal court in Kentucky need only be concerned with Due Process when assessing the reach of the court's personal jurisdiction.

When faced with a personal jurisdiction issue, a federal district court has three procedural alternatives: [1] "[it] may determine the motion on the basis of affidavits alone; or [2] it may permit discovery in aid of the motion; or [3] it may conduct an evidentiary hearing on the merits of the motion."  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  If there are issues of disputed fact which must be resolved in order to make a determination, the court may, as a matter of discretion, conduct an evidentiary hearing to determine the factual foundation of the case as it pertains to jurisdiction.  *See id.*  As in the instance action, where an evidentiary hearing is not held, Plaintiff is only required to make a *prima facie* showing for personal jurisdiction and the Court is to resolve any controverted facts in a light most favorable to Plaintiff.  *Id.*

The Sixth Circuit has developed a three-pronged method for determining whether the exercise of personal jurisdiction over a defendant complies with due process under a minimum contacts analysis.[2] *See Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).[3] The inquiry focuses on a defendant's relationship with the forum state as it pertains to the case *sub judice*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiciton over the defendant reasonable.

*Id.* As noted by Tri-State, however, any minimum contacts analysis should not be applied mechanically, but rather the facts of each case should be examined individually. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 225 (6th Cir. 1972), *abrogated on separate grounds by Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998).

**B.      Jurisdictional Factors**

   **1.      Availment**

Purposeful availment, the first prong of the *Mohasco* analysis, is established: (1) when a defendant conducts business, creates obligations, or sets in motion business operations in a state, (2) where that conduct has an impact on that state's commerce, and (3) in cases where the defendant "should have reasonably foreseen that the transaction

---

[2] In its filings, Tri-State appears to make only a specific jurisdiction argument. Tri-State does not, and likely could not, argue that Chevalier has enough contacts with Kentucky to establish general jurisdiction. Regardless, the record does not speak to Chevalier's contacts with Kentucky unrelated to Tri-State.

[3] Both parties cite to and agree that *Mohasco* provides the controlling test for establishing personal jurisdiction via minimum contacts in the Sixth Circuit, though both parties cite to establish Supreme Court precedent providing the general foundation for personal jurisdiction jurisprudence.

would have consequences in that state." 401 F.2d at 382-83. The Sixth Circuit has held that a single "substantial business contract" can satisfy the requirements of purposeful availment. *In-Flight Devices*, 466 F.2d at 227. In that case, the court held that a purchaser's formation of a contract for the purchase of goods at a price of over $200,000 was substantial enough to show purposeful action within the forum state. *Id.* The court found it significant that the out-of-state defendant knew that the plaintiff was located in the forum state and that the making or breaking of the contract would have consequences within the state. *Id.* The court also noted that the exercise of jurisdiction in this case was not the result of any unilateral activity of the plaintiff, since the defendant intentionally chose to do business with a seller in the forum state. *Id.* at 228.[4]

Moreover, in a case factually analogous to the instance action, the Sixth Circuit found purposeful availment. In *Cole v. Mileti*, the Sixth Circuit held that a debtor who had contractually agreed to purchase a partner's share of a California corporation was subject to personal jurisdiction in the partner's state of residence, Ohio, even though the parties had conducted all correspondence via telephone and mailed letters between California and Ohio. 133 F.3d 433, 436 (6th Cir. 1998). In making its decision, the court noted that "[i]f, as here, a nonresident defendant transacts business by negotiating and executing a

---

[4] Chevalier relies on *CTC-Minemet, Inc. v. Glens Falls Cement Co., Inc.*, 742 F. Supp. 398 (E.D.Ky. 1989), and *Tube Turns Div. of Chemetron v. Patterson Co.*, 562 S.W.2d 99 (Ky. Ct. App. 1978), for his contention that the making of a single order cannot, alone, be the basis for establishing personal jurisdiction. Both cases are distinguishable, however. In *CTC-Minemet*, both the seller and the purchaser were non-residents of the forum state. 742 F.Supp. at 401. Instead, the good being purchased originated in the forum state. The court held that the fact that a product originates in a forum state is not, alone, enough to establish personal jurisdiction. *Id. Tube Turns* is distinguishable because that case involved a plaintiff seller in the forum state suing an out-of-state purchaser – the opposite of the present facts – and it was the plaintiff who initiated the contact with the out-of-state defendant. 562 S.W.2d at 99. As a result, the court held that the defendant did not avail himself of doing business in the forum state. *Id.* at 100.

contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Id.*

Here, the first prong of the *Mohasco* analysis is satisfied as Chevalier purposefully availed himself of the benefits of transacting business with a Kentucky corporation. The record, viewed in favor of Plaintiff, reveals that Chevalier solicited business from Tri-State, known by Chevalier to be a Kentucky corporation, which including the sending of emails and the placing of phone calls. As the Sixth Circuit noted in *Kerry Steel, Inc. v. Paragon Indus.*, reaching into another state to conduct business with its residents is a significant factor in establishing purposeful availment. 106 F.3d 147, 151 (6th Cir. 1996). To that effect, a Wisconsin resident's solicitation of business from a Kentucky company shows an intention to reach out, beyond the borders of Wisconsin, in an attempt to take advantage of the business opportunities in Kentucky.

Furthermore, as pronounced in *In-Flight Devices*, a substantial contract can be the basis for a showing of purposeful availment. *See* 466 F.2d at 227. Irrespective of whether, in the case of the July 11 invoices, there was one contract for four trucks or four contracts for one truck, the total purchase price was $900,000. When indexed for inflation, the aggregate transaction between Chevalier and Tri-State is certainly comparable to the $200,000 *In-Flight Devices* transaction. Moreover, if the July 11 transactions are viewed as four separate contracts for $225,000 each, this would demonstrate that Chevalier contractually obligated himself multiple times to a Kentucky business, which would in turn evidence an even greater degree of availment.[5] Finally, this analysis does not even take

---

[5] In addition to the consummated transactions, there is also evidence that Chevalier intended to create an on-going business relationship with Tri-State. According to Tri-State,

into account the August 16 transaction that, although disputed by Chevalier, is strong evidence when viewed in a light most favorable to Plaintiff that Chevalier was involved in more than one transaction with Plaintiff, both of which make up the subject-matter of the instant action.

Because Chevalier initiated contact with Tri-State, entered into at least one substantial contract with Tri-State, and continued to solicit business from Tri-State thereafter, Chevalier purposefully availed himself of the privilege of doing business in the Kentucky market. Accordingly, Chevalier should have reasonably foreseen being haled into court in the state.[6]

### 2. Specific Jurisdictional Nexus

The second prong of *Mohasco* asks whether Plaintiff's cause of action arose from Defendant's activities in the forum state. *See* 401 F.2d at 381. In explaining this part of the analysis, the *Mohasco* court noted that the cause of action will only be said not to have arisen in this respect when the facts of the controversy are not related to the defendant's

---

Chevalier sent periodic email solicitations to Newman, and this continued to occur even after the consummation of the contracts at issue. This evinces an intention by Chevalier to continue his business relationship with Tri-State, a Kentucky company.

[6] It is important to note that the physical presence of Defendant, or his agent, within the forum state is not required to exercise personal jurisdiction. *See Mohasco*, 401 F.3d at 382. As noted by the *Mohasco* court,

> The soliciting of insurance by mail, the transmission of radio broadcasts into a state, and the sending of magazines and newspapers into a state to be sold there by independent contractors are all accomplished without the physical presence of an agent; yet all have been held to constitute the transaction of business in a state.

*Id.* Additionally, in *Cole*, the Sixth Circuit dealt specifically with the issue of business transacted between parties via telephone and mail. The court determined that this was not a bar to the assertion of personal jurisdiction. *See* 133 F.3d at 436.

contacts with the state. *Id.* at 384 n.29. In applying this prong, the Sixth Circuit has held that entering into a contract with a corporation in the forum state is enough to meet the second part of *Mohasco* in a breach of contract case, since the contract itself "is necessarily the very soil from which the action for breach grew." *In-Flight Devices*, 466 F.2d at 229. Here, the fact that Chevalier entered into a contract with a Kentucky corporation and the instant action is based upon a breach thereof is sufficient to satisfy the second prong of *Mohasco*.

### 3. Reasonableness / State's Interest

The final prong of the *Mohasco* analysis addresses the reasonableness of the Court's exercise of jurisdiction taking into account the acts of, or consequences caused by, Defendant and the connection with the forum state. *See* 401 F.2d at 381. The Sixth Circuit has read a state's interest analysis into the last prong to account for the forum state's interest in resolving the conflict. *See id.* at 384*; see also In-Flight Devices*, 466 F.2d at 232. To this effect, once the first two prongs have been satisfied in favor of exercising personal jurisdiction, a presumption of appropriateness arises and the third prong of the analysis acts only to identify those unusual cases where a state interest cannot be found or jurisdiction would be particularly unreasonable. *See Mohasco*, 401 F.2d at 384; *see also Cole*, 133 F.3d at 436.

"It cannot be disputed that a state has an interest in resolving a suit brought by one of its residents." *In-Flight Devices*, 466 F.2d at 232; *see also Mohasco*, 401 F.2d at 385 ("when the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted."); *First Nat'l Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982) ("Kentucky has

a substantial interest in seeing that its residents get the benefit of their bargain."). In the present case, Kentucky has an interest in adjudicating a breach of contract claim by one of its corporate residents and, relatedly, ensuring that Tri-State receives its contractual remedy where appropriate. Kentucky's interest is justified due to the effect of contractual breaches on a corporation's finances and effect that has on the State's economy.

Accordingly, the Court's exercise of personal jurisdiction over Chevalier is reasonable and satisfies due process based on Defendant's purposeful availment of the benefits of conducting business with a Kentucky corporation, the cause of action's nexus with Defendant's contacts in the forum state, and the forum state's interest in adjudicating Plaintiff's claims.

### IV.  CONCLUSION

In accordance with the foregoing analysis, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 34) be, and hereby is, **DENIED**; and

(2) Consistent with Magistrate Judge Wehrman's Order (Doc.#38), counsel shall submit an Amended Scheduling Order **within ten (10) days**.

This 31st day of August 2007.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\Opinions\2-05-210-Tri-State (MTD).wpd